United States Court of Appeals,

Eleventh Circuit.

No. 94-6200.

MARINE COATINGS OF ALABAMA, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

Jan. 8, 1996.

Appeal from the United States District Court for the Southern District of Alabama. (No. CV84-958-T-C), Daniel Holcombe Thomas, Senior District Judge.

Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and HENDERSON, Senior Circuit Judge.

TJOFLAT, Chief Judge:

I.

Following a bench trial in the district court, Marine Coatings of Alabama, Inc., recovered a judgment against the United States for work performed on three naval vessels as a repair subcontractor of Braswell Shipyards, Inc. [1]  The judgment included an award of

---

[1] The trial of this case was held and the judgment entered following two appeals to this court.  The first appeal, *Marine Coatings of Alabama, Inc. v. United States,* 792 F.2d 1565 (11th Cir.1986) (*Marine Coatings I* ), was from a summary judgment entered for the Government on the ground that Marine Coatings could not establish that Braswell Shipyards was acting for the Government in ordering Marine Coatings to perform the repair work.  We vacated the summary judgment because the district court failed to give Marine Coatings ten days' notice as required by Fed.R.Civ.P. 56.

On remand, the district court found no evidence in the record to support Marine Coatings' claim that the Government had authorized Braswell Shipyards to contract for the repair work and granted summary judgment for the Government. *Marine Coatings of Alabama, Inc. v. United States,* 674 F.Supp. 819 (S.D.Ala.1987).  Finding that a genuine issue of material fact existed concerning Braswell's authority, we vacated the district court's judgment and remanded the case for further proceedings. *Marine Coatings of Alabama, Inc.*

pre-judgment interest;  it also included an award of attorney's fees.  In this appeal, the Government challenges the award of pre-judgment interest, contending that the Public Vessels Act, ch. 428, 43 Stat. 1112 (1925), 46 U.S.C. App. §§ 781-790 (1988), the statute that supposedly waives the Government's sovereign immunity for claims such as the one brought here, does not permit the recovery of pre-judgment interest.  The Government also challenges the district court's award of attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 (1994), contending that it was substantially justified in contesting the subcontractor's claim.  We consider these challenges in turn.

## II.

## A.

Before we consider the Government's argument that the Public Vessels Act precludes the award of pre-judgment interest in this case, it will be helpful to review the events surrounding the enactment of the statute. [2]  Under the common law doctrine of sovereign immunity, the United States cannot be sued in admiralty without its consent.  Nor is the Government's property subject to *in rem* proceedings in a court of admiralty.  *See, e.g., The Siren*, 74 U.S. (7 Wall.) 152, 19 L.Ed. 129 (1868).  Prior to 1916, the only recourse for those who suffered injury caused by a

*v. United States,* 932 F.2d 1370 (11th Cir.1991) (*Marine Coatings II* ).  The case then went to trial, resulting in the judgment for Marine Coatings.

[2]A more complete history can be found in *Canadian Aviator, Ltd. v. United States,* 324 U.S. 215, 218-25, 65 S.Ct. 639, 641-44, 89 L.Ed. 901 (1945), and *American Stevedores, Inc. v. Porello,* 330 U.S. 446, 450-54, 67 S.Ct. 847, 849-51, 91 L.Ed. 1011 (1947).

Government-owned vessel was to seek a private bill in Congress authorizing suit to be brought against the United States.

During World War I, the Government became the owner of a substantial merchant fleet and the volume of private claims submitted to Congress increased correspondingly. To provide an orderly method for handling these claims, Congress passed the Shipping Act, 1916, ch. 451, 39 Stat. 728, which provided that Government-owned vessels "while employed solely as merchant vessels shall be subject to all laws, regulations, and liabilities governing merchant vessels...." Shipping Act § 9, 39 Stat. at 730-31. The Shipping Act was held to allow *in rem* proceedings against Government-owned vessels. *See, e.g., The Lake Monroe,* 250 U.S. 246, 39 S.Ct. 460, 63 L.Ed. 962 (1919). To prevent such actions, the Congress in 1920 passed the Suits in Admiralty Act, ch. 95, 41 Stat. 525 (1920), 46 U.S.C. App. §§ 741-752 (1988). In lieu of an *in rem* action against a Government-owned vessel or its cargo, the Act gave claimants the right to sue the United States *in personam:*

> [I]n cases where if [a vessel owned by the United States] were privately owned or operated, or if [cargo owned or possessed by the United States] were privately owned [or] possessed, a proceeding in admiralty could be maintained ..., a libel in personam may be brought against the United States ... *provided that such vessel is employed as a merchant vessel....*

Suits in Admiralty Act § 2, 41 Stat. at 525-26 (codified as amended at 46 U.S.C. App. § 742) (emphasis added). Public vessels, as opposed to merchant vessels, were excluded from the coverage of this Act, and thus the Government's sovereign immunity still prevented a claimant from bringing an *in rem* or any other proceeding in admiralty against the United States for injury caused by a public vessel. *See, e.g., The Western Maid,* 257 U.S. 419, 42

S.Ct. 159, 66 L.Ed. 299 (1922).

In 1925, Congress was persuaded to extend the right to sue the United States to include claims involving public vessels. It chose not to amend the Suits in Admiralty Act, however, but instead passed a separate Public Vessels Act, which provides that:

> A libel in personam in admiralty may be brought against the United States ... *for damages caused by a public vessel of the United States,* and for compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States.

46 U.S.C. App. § 781 (emphasis added).

In 1960, Congress repealed the "merchant vessel" proviso of the Suits in Admiralty Act, thus expanding the coverage of that Act to claims against the United States involving public vessels. Act of Sept. 13, 1960, Pub.L. No. 86-770, § 3, 74 Stat. 912. The 1960 amendment did not, however, in any way repeal or modify the Public Vessels Act. *United States v. United Continental Tuna Corp.,* 425 U.S. 164, 181, 96 S.Ct. 1319, 1329, 47 L.Ed.2d 653 (1976). Rather, claims that fall "within the scope of the Public Vessels Act remain subject to its terms after the 1960 amendment to the Suits in Admiralty Act." *Id.* at 181, 96 S.Ct. at 1329. This means that in a case that is covered by the Public Vessels Act—a case that would now appear to be covered by both acts—only the provisions of the Public Vessels Act are applied.[3]

---

[3]Since 1960 it has been common for courts and commentators to speak in terms of *both* acts applying to certain claims. *See, e.g., Justice v. United States,* 6 F.3d 1474, 1475-76 (11th Cir.1993); *Bonanni Ship Supply, Inc. v. United States,* 959 F.2d 1558, 1561 n. 7 (11th Cir.1992); *Parks v. United States,* 784 F.2d 20, 28 (1st Cir.1986); *Blevins v. United States,* 769 F.2d 175, 180 n. 2 (4th Cir.1985); Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 17-1, at 867 (2d ed. 1994). Given the Supreme Court's ruling in *Continental Tuna,* however, such language is

B.

In this case, the district court awarded pre-judgment interest in accordance with the Suits in Admiralty Act, which provides that "[a] decree against the United States ... may include costs of suit, and when the decree is for a money judgment, interest at the rate of 4 per centum per annum until satisfied...." 46 U.S.C. App. § 743.  The United States, however, contends the Public Vessels Act bars the award, because that Act provides that:

> suits shall be subject to and proceed in accordance with the provisions of [the Suits in Admiralty Act] ... except that *no interest shall be allowed on any claim up to the time of the rendition of judgment* unless upon a contract expressly stipulating for the payment of interest.

46 U.S.C. App. § 782 (emphasis added).  There is no contract in

---

somewhat misleading.  Claims for "damages caused by a public vessel," for example, do appear to fall under the terms of both acts, but the lifting of the Government's sovereign immunity for such claims is governed exclusively by the provisions in the Public Vessels Act;  the Suits in Admiralty Act, in and of itself, simply does not apply.  *See Continental Tuna,* 425 U.S. at 181, 96 S.Ct. at 1329.

Generally, it makes no difference which of the two acts applies, since the same substantive law governs and since the Public Vessels Act incorporates most of the procedural provisions of the Suits in Admiralty Act.  *See* 46 U.S.C. App. § 782.  There are a few differences, however.  Besides disallowing pre-judgment interest on money damages—the difference at issue in this case—the Public Vessels Act (1) has a more liberal venue provision (§ 782);  (2) restricts subpoenas against officers and crews without the permission of certain authorities (§ 784);  (3) requires reciprocity in order for an alien to bring suit under the act (§ 785);  and (4) restricts the power of the attorney general to arbitrate disputes (§ 786).

The Maritime Law Association of the United States has recognized the redundancy of the Public Vessels Act since the repeal of the "merchant vessel" proviso of the Suits in Admiralty Act and has recommended that the Public Vessels Act be repealed.  *See Report of the Committee on Maritime Legislation of the Maritime Law Association of the United States,* Document No. 646 (May 24, 1983).

this case that provides for pre-judgment interest. We must therefore decide whether Marine Coatings' claim falls within the scope of the Public Vessels Act; for if it does, the district court erred in awarding pre-judgment interest under the terms of the Suits in Admiralty Act.[4]

The district court, believing that "either statute could control the case," looked to the complaint to determine which statute Marine Coatings had alleged to govern the issue of sovereign immunity. The complaint stated that the Suits in Admiralty Act controlled; accordingly, the court awarded final judgment under that Act. Although we reach the same ultimate conclusion as the district court, we look instead to the scope of the Public Vessels Act and the nature of Marine Coatings' claim to determine which act applies in this case.

The Government maintains that any claim involving a public vessel brought *in personam* against the United States on *in rem* principles is a claim covered by the Public Vessels Act. The Public Vessels Act does not, however, apply to all maritime claims involving a public vessel. Rather, it lifts the government's sovereign immunity only for claims "for damages caused by a public vessel of the United States, and for compensation for towage and salvage services...." 46 U.S.C. App. § 781. To make its case, however, the Government relies on the expansive interpretation that

---

[4]It is not disputed that the ships involved in this case are public vessels. *See Marine Coatings,* 674 F.Supp. at 822; *Marine Coatings II,* 932 F.2d at 1373 n. 1.

has been given to this language by the Supreme Court.[5]

---

[5]The Government relies more directly on our opinion in *Stevens Technical Servs. v. United States,* 913 F.2d 1521 (11th Cir.1990), a case involving a claim nearly identical to the one in this case. The court in *Stevens Technical* wrote: "We hold: [The Public Vessels Act] applies to and controls this public vessel case. [The Public Vessels Act] controls with all of its restrictive provisions." 913 F.2d at 1527. We were not faced, however, with the question of whether the claim in that case did or did not fall under the provisions of § 781 of the Public Vessels Act, but rather whether the no-lien provisions of § 788 barred the claim. As we stated the case:

> The question is then reduced to:
>
> Does § 788 in the light of [the Suits in Admiralty Act] and [the Public Vessels Act] prevent the assertion of a maritime lien for repairs to a public vessel in a [Public Vessels Act] suit in personam with election for in rem liability?

*Id.* It was this question that *Stevens Technical* answered. Thus, the question of whether Marine Coatings' claim falls within the Public Vessels Act is still an open one.

This same question concerning the effect of § 788 arose in the last appeal of this case and was answered based on the *Stevens Technical* precedent. *Marine Coatings II,* 932 F.2d at 1375-76. The issue of whether the claim fell within the provisions of the Public Vessels Act was not before us. Rather, an assumption was made that the Act applied:

> The [district] court determined that the three ships were "public vessels," i.e., ships owned and operated by the government for official purposes. Therefore, provisions of the Public Vessels Act applied. The [Suits in Admiralty Act], as its name implies, governs suits in admiralty, including those between private parties. The provisions of the Public Vessels Act apply when suits in admiralty are brought against the United States regarding public vessels.

*Id.* at 1373 n. 1. While it is true that the ships were public vessels, it does not automatically follow that the Public Vessels Act applies. Furthermore, as discussed in this opinion, the Suits in Admiralty Act applies only to suits by a private party against the United States, and the Public Vessels Act applies only to claims "for damages caused by a public vessel of the United States." *See* 46 U.S.C. app. § 781. Claims involving public vessels other than claims "for damages caused by a public vessel" are covered by the Suits in Admiralty Act. *See* 46 U.S.C. App. §

Originally, the words of the Public Vessels Act seemed to mean what they said. The purpose of the Act was described in congressional reports as follows:

> The chief purpose of [the Public Vessels Act] is to grant private owners of vessels and of merchandise a right of action *when their vessels or goods have been damaged as the result of a collision with any Government-owned vessel,* though engaged in public service, without requiring an application to Congress in each particular instance for the passage of a special enabling act.

S.Rep. No. 941, 68th Cong., 2d Sess. 1 (1925) (emphasis added); H.Rep. No. 913, 68th Cong., 1st Sess. 1 (1924). In *Canadian Aviator, Ltd. v. United States,* 324 U.S. 215, 65 S.Ct. 639, 89 L.Ed. 901 (1945), however, the Supreme Court held that claims for "damages" authorized by the Public Vessels Act should not be limited only to cases in which a public vessel is the "physical instrument" that caused "physical damage" (that is, only to collision cases). 324 U.S. at 224, 65 S.Ct. at 644. The Court decided that the language in the congressional reports "does not require that the statute should be so limited" and that a narrow reading does not comport with the broad language used by Congress in the statute. *Id.* at 225, 65 S.Ct. at 644. Thus, the Court held that the Act applied when a United States ship "caused" damage to a private ship by negligently leading it to strike a submerged wreck. *Id.* at 228-29, 65 S.Ct. at 646. Two years later, in *American Stevedores v. Porello,* 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011 (1947), the Court held that the Public Vessels Act should not be read "only to provide a remedy to the owners of damaged property," and expanded its coverage to include a claim for

742.

personal injuries suffered by a longshoreman aboard a public vessel. 330 U.S. at 454, 67 S.Ct. at 851.

The Court has never clearly described what claims actually fall under the Public Vessels Act; in fact, it has explicitly refused to do so on two occasions. In *Calmar S.S. Corp. v. United States,* 345 U.S. 446, 73 S.Ct. 733, 97 L.Ed. 1140 (1953), a case involving claims for the loss of a vessel chartered to the United States, Justice Frankfurter wrote:

> It is not to be assumed that all claims sounding in contract can form the basis of a suit under the Public Vessels Act. The Act expressly authorizes towage and salvage claims. We intimate no opinion as to other claims, and do not suggest that all or any of the causes of action in this very suit would or would not qualify under the Public Vessels Act. There are cases in which jurisdiction over contract claims other than towage or salvage has been assumed. *Thomason v. United States,* 184 F.2d 105 [ (9th Cir.1950) ]; *United States v. Loyola,* 161 F.2d 126 [ (9th Cir.1947) ].

*Calmar S.S. Corp.,* 345 U.S. at 456 n. 8, 73 S.Ct. at 738 n. 8. Likewise, in the *Continental Tuna* case, the Supreme Court explained that the deletion in 1960 of the "merchant vessel" proviso was clearly intended to "bring[ ] within the Suits in Admiralty Act whatever category of claims involving public vessels was beyond the scope of the Public Vessels Act." 425 U.S. at 180-81, 96 S.Ct. at 1328. But again, the Court declined to define the scope of the Public Vessels Act:

> It is not to be assumed that contract claims other than those expressly authorized by the Public Vessels Act were necessarily beyond the scope of the Act. As in [*Calmar S.S. Corp.* ] we intimate no view on the subject.

*Id.* at 181 n. 21, 96 S.Ct. at 1328 n. 21. We are left, then, primarily with *Canadian Aviator* and *American Stevedores* to help us determine whether the Public Vessels Act covers the maritime claim

in this case.

Marine Coatings' claim for damages arose under the Federal Maritime Lien Act, ch. 250, § 30, subsections P-T, 41 Stat. 1005-1006 (1920) (repealed by Pub.L. No. 100-710, § 106(b)(2), 102 Stat. 4752 (1988), and replaced by provisions of 46 U.S.C. §§ 31341-31343 (1988 & Supp. V 1993)). Prior to its repeal, this Act provided as follows:

> Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel.

Federal Maritime Lien Act § 30, subsection P, 41 Stat. at 1005.[6] Through the device of the *in personam* action on *in rem* principles authorized by the Suits in Admiralty Act, Marine Coatings successfully recovered the cost of its repair work. Such an action clearly does not fall within the terms of the Public Vessels Act. First, it is not literally an action for "damages caused by a public vessel," since the "damages" in this case resulted from a failure by Braswell Shipyards and the Government to pay Marine Coatings for the repair work, not from any negligent act by a ship or its crew. Second, it is not an action for "compensation for towage and salvage services, including contract salvage, rendered

---

[6]Because Marine Coatings did the repair work on behalf of Braswell Shipyards, the validity of Marine Coatings' maritime lien depended on whether the contractor was a "person authorized by the owner" to order the work. *See* Federal Maritime Lien Act, § 30, subsection P, 41 Stat. at 1005. After the trial on this issue, the district court held that the United States had "procured," "authorized," and "ratified" the repair work and that Marine Coatings had a valid maritime lien on which it could recover money damages.

to a public vessel of the United States." *See* 46 App.U.S.C. § 781.

The Government argues that it is "axiomatic that [a] maritime lien is "damages caused by a public vessel,' " and that therefore the Public Vessels Act applies in this case. For support, the Government cites *Thomason v. United States,* 184 F.2d 105, 107-108 (9th Cir.1950), in which the Ninth Circuit held that the "damages" phrase "includes damages arising from those acts for which a private ship is held legally responsible as a juristic person under the customary legal terminology of the admiralty law."[7] This is by far the broadest reading any court has given the Public Vessels Act, and, if correct, it would expand the coverage of the Public Vessels Act to all maritime claims against the United States involving a public vessel. We believe that such a reading finds no support in the text of the statute or in the purpose of the Act—even as that purpose has been broadly read by the Supreme Court.

The text of the Public Vessels Act authorizes suits not only for "damages caused by a public vessel," but also for "compensation for towage and salvage services, including contract salvage, rendered to a public vessel...." 46 U.S.C. App. § 781. The specific inclusion of particular contract claims would be meaningless if the "damages" provision extended to maritime contract claims in general. Moreover, we do not read the Supreme Court's decisions as an effort to stretch the meaning of the "damages" provision as far as it will go, but rather as an effort

_____

[7]The court in *Thomason* applied the Public Vessels Act to a claim for unpaid compensation for seamen's services. 184 F.2d at 108.

not to limit the phrase in an unnatural manner, in light of the congressional purpose behind the Public Vessels Act. *See* Grant Gilmore & Charles L. Black, Jr., *The Law of Admiralty,* § 11-11, at 984-85 (2d ed. 1975). *Canadian Aviator* and *American Stevedores,* while not collision cases of the type described in the legislative history, are nonetheless cases involving torts committed by the crews of public vessels that caused damage to person or property. It would be a stretch to hold that these cases support the extension of the Public Vessels Act to cover all maritime claims, whether sounding in contract or in tort.[8]

Based on our reading of the statute and of the precedent binding upon this court, we hold that Marine Coatings' claim for recovery on a maritime repair lien is not a claim authorized by the provisions of the Public Vessels Act. Consequently, this case falls within that "category of claims involving public vessels [that are] beyond the scope of the Public Vessels Act," *Continental Tuna,* 425 U.S. at 180-81, 96 S.Ct. at 1328, and, as such, are covered only by the Suits in Admiralty Act. We therefore affirm

---

[8]Moreover, we find no reason, as the Ninth Circuit evidently did, to expand any further the coverage of the Public Vessels Act. *Canadian Aviator, American Stevedores,* and *Thomason* were decided at a time when an expansive reading of the "damages" provision served to enlarge the coverage of the Act. Since 1960, however, any claim not covered by the Public Vessels Act is covered by the Suits in Admiralty Act. *See supra* at 596. In short, by holding that Marine Coatings' claim is not authorized by the Public Vessels Act, we do not deny the company its remedy. On the contrary, our decision enlarges Marine Coatings' remedy by allowing it to recover prejudgment interest on its damages award. By preserving the narrow scope of the Public Vessels Act, the congressional purpose of providing a remedy in these cases—the purpose that drove the Supreme Court's expansive readings—is not in any way "thwarted by an unduly restrictive interpretation." *Canadian Aviator,* 324 U.S. at 222, 65 S.Ct. at 643.

the decision of the district court to award prejudgment interest at a rate of four percent per year in accordance with the terms of that Act.

## III.

The district court awarded attorney's fees pursuant to 28 U.S.C. § 2412, as amended by the Equal Access to Justice Act, Pub.L. No. 96-481, Title II, § 204(a), 94 Stat. 2327 (1980), which provides, in part, that:

> [A] court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ..., unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Under 28 U.S.C. § 2412(d)(2)(A), "fees and other expenses" include "reasonable attorney fees."

The district court concluded that the Government was not "substantially justified" in proceeding to trial on the ground that our decision in *Marine Coatings II,* which set aside the district court's summary judgment that Marine Coatings was not entitled to a maritime lien, had "effectively decided the case." The court was mistaken; *Marine Coatings II* did not resolve the factual question. Rather, we reversed the summary judgment because we found that a genuine issue of fact existed regarding the validity of the lien. Indeed, our decision was quite specific as to what factual issues remained to be resolved:

> Applying the relevant standard of review, we find that there is a genuine issue as to whether the government procured [Marine Coatings'] work, authorized the work, or ratified the procurement of [Marine Coatings'] work. Alternatively, there is a genuine issue as to whether Braswell was authorized by the government to procure [Marine Coatings'] work. Resolution of this issue is essential to determine whether [Marine

> Coatings] is entitled to recovery under the [Federal Maritime Lien Act]. Because we find a material issue of fact exists on this point, we REVERSE and REMAND for appropriate proceedings in the district court.

*Marine Coatings II*, 932 F.2d at 1376. We cannot think of more "appropriate proceedings" in which to resolve a question of fact than a trial. Indeed, in its dispositive order, the district court itself points out that our decision in *Marine Coatings II* "left open the question as to whether the Government *procured* [Marine Coatings'] work, *authorized* the work, or *ratified* the procurement of [Marine Coatings'] work." After trial, the district court found that "the answer to all three questions is, "Yes,' " and it entered judgment accordingly. There appears to be no reason, other than the district court's opinion that "[t]he Government should have settled after the Eleventh Circuit rendered its opinion," that the United States was not substantially justified in having the issues of fact in this case resolved at trial. We therefore reverse the order of the district court awarding attorney's fees to Marine Coatings.

In conclusion, we AFFIRM the district court's award of prejudgment interest and REVERSE the award of attorney's fees.