[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
09/01/00
THOMAS K. KAHN
CLERK

_____

No. 99-2488

_____

D. C. Docket No. 97-00877-CIV-J-10A


MID-SOUTH HOLDING COMPANY, INC.,

                                        Plaintiff-Appellant,

                versus

UNITED STATES OF AMERICA,

                                        Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____
(September 1, 2000)


Before BLACK, CARNES and KRAVITCH, Circuit Judges.

**KRAVITCH, Circuit Judge:**

In this appeal we decide whether the "discretionary function" exception to the waiver of the United States' sovereign immunity found in the Suits in Admiralty Act precludes a claim arising out of the allegedly negligent performance of a search of a vessel by the United States Customs Service and Coast Guard. We hold that it does.

## I. BACKGROUND AND PROCEDURAL HISTORY

On or about May 16, 1996, agents of the United States Customs Service and Coast Guard (collectively, the "Customs Service"[1]) boarded the "Abner's Choice" (the "vessel"), a commercial fishing vessel operated by Plaintiff-Appellant Mid-South Holding Company, Inc., ("Mid-South") and docked at the Sister's Creek Marina in Jacksonville, Florida. Acting on reports that the vessel was involved in narcotics trafficking, the agents searched the vessel for contraband, but discovered none. The search of the vessel lasted approximately thirty minutes.

On the day following the search, the vessel's lower hold and engine room

---

[1]Coast Guard officers are "deemed to be acting as agents of the particular executive department . . . charged with the administration of the particular law." See 14 U.S.C. § 89(b)(1) (2000). Because the Coast Guard was acting at the direction of the Customs Service in its enforcement of, presumably, the Controlled Substances Import and Export Act, 21 U.S.C. §§ 951-71, we refer to the agencies jointly.

flooded, causing it to sink. Mid-South attributes this incident to the disconnection sometime during the search of an electrical cord that powered the vessel's bilge pump. Although Charles Abner, the founder and a corporate officer of Mid-South, was able to refloat the vessel, an electrical outage two weeks later disabled the vessel's bilge pump, again causing the vessel to flood and sink. Abner was unable to refloat the vessel a second time, presumably because of structural damages resulting from the first sinking.

After pursuing an unsuccessful administrative claim with the Customs Service to recover the value of the lost vessel, Mid-South filed a complaint against the United States in the United States District Court for the Middle District of Florida. Originally, Mid-South brought its cause of action under the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. §§ 1346(b), 2671-80, but subsequently amended its complaint by substituting the Suits in Admiralty Act (the "SAA"), 46 U.S.C. §§ 741-52, as the proper basis for the suit. The United States moved for dismissal or, alternatively, summary judgment on two grounds: (1) the district court lacked subject matter jurisdiction over the SAA claim because the United States enjoys sovereign immunity from claims arising from the detention of goods by agents of the Customs Service; and (2) Mid-South did not have standing to bring the suit because it did not own the vessel at the time it was destroyed and

therefore was not a "real party in interest."[2]  The district court agreed with the

former assertion and granted the United States' motion.  This appeal followed.


## II.  ANALYSIS

It is a well-settled axiom that "[t]he United States, as sovereign, is immune

from suit save as it consents to be sued."  United States v. Sherwood, 312 U.S. 584,

586, 61 S. Ct. 767, 769 (1941).  Supreme Court precedent has expounded that this

waiver of immunity "must be unequivocally expressed in statutory text."  Lane v.

Pena, 518 U.S. 187, 192, 116 S. Ct. 2092, 2096 (1996).  The SAA, which provides

the sole jurisdictional basis for admiralty claims against the United States, includes

such an explicit waiver: "In cases where . . . if a private person or property were

involved, a proceeding in admiralty could be maintained, any appropriate nonjury

proceeding in personam may be brought against the United States . . . ."  46 U.S.C.

§ 742 (2000); see also Drake Towing Co. v. Meisner Marine Constr. Co., 765 F.2d

1060, 1063-64 (11th Cir. 1985).  Although the text of the SAA does not impose

---

[2]Abner purchased the vessel in his name in 1992.  After a failed attempt to transfer title to the vessel to his wife and brother, Abner executed a bill of sale assigning ownership of the vessel to Mid-South.  Abner, however, never filed the bill of sale.  The United States contends that Abner did not adhere to the requirements for transferring title to a vessel as outlined by Florida law, see Fla. Stat. ch. 328.01(a), and that, consequently, Mid-South never obtained title to the vessel.  Because we affirm the district court's determination that it lacked subject matter jurisdiction over this claim, we need not reach the standing issue.

4

any limitations on this waiver of immunity, courts have recognized that exceptions exist. For example, every circuit to consider the issue has concluded that the SAA's waiver of immunity is subject to the "discretionary function" exception identified in the FTCA, 28 U.S.C. § 2680(a). See Tew v. United States, 86 F.3d 1003, 1005 (10th Cir. 1996) (listing cases from the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, Eleventh, and D.C. Circuits, and joining in their shared holding). Where applicable, such an exception to this statutory waiver of immunity abrogates federal subject matter jurisdiction over any pursuant claim. See Cohen v. United States, 151 F.3d 1338, 1340 (11th Cir. 1998) (characterizing sovereign immunity as an issue of subject matter jurisdiction).

Before the district court, the United States argued that another of the FTCA's exceptions to its waiver of immunity—the "law enforcement" exception, 28 U.S.C. § 2680(c)[3]—should be incorporated judicially into the SAA, and the district court agreed. Prior to oral argument, however, this court raised the possibility that the discretionary function exception, as defined in the FTCA, also might confer immunity on the United States and accordingly ordered supplemental

---

[3]The law enforcement exception precludes "[a]ny claim arising in respect of . . . the detention of any goods or merchandise by any officer of the customs or excise or any other law-enforcement officer." 28 U.S.C. § 2680(c) (2000). The Supreme Court has interpreted this exception broadly to include "any claim 'arising out of' the detention of goods . . . includ[ing] a claim resulting from the negligent handling or storage of detained property." Kosak v. United States, 465 U.S. 848, 854, 104 S. Ct. 1519, 1523-24 (1984).

briefing.[4]  As alluded to above, this circuit is among the majority holding that the

SAA's waiver of immunity is subject to the discretionary function exception.  See

Williams v. United States, 747 F.2d 700, 700 (11th Cir. 1984), aff'g and adopting

Williams By and Through Sharpley v. United States, 581 F. Supp. 847 (S.D. Ga.

1983).  Although the United States did not initially elect to assert this exception as

a basis for immunity, judicial providence counsels us to consider its applicability to

the instant case before reaching the novel question of whether to incorporate the

FTCA's law enforcement exception into the SAA.  See Allen v. Ferguson, 791

F.2d 611, 615 (7th Cir. 1986) ("[I]n keeping with the notions of judicial restraint,

federal courts should not reach out to resolve complex and controversial questions

when a decision may be based on a narrower ground.").[5]  We review issues

---

[4]Our authority to order supplemental briefing on this issue on appeal derives from our obligation to inquire *sua sponte* into issues of subject matter jurisdiction.  See Rembert v. Apfel, 213 F.3d 1331, 1333 (11th Cir. 2000).

[5]The issue whether to incorporate the law enforcement exception into the SAA would be one of first impression in this circuit, and, in light of precedent, a complex one.  In De Bardeleben Marine Corp. v. United States, 451 F.2d 140, 142-43 (5th Cir. 1971), a binding precedent, see Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting all decisions of the former Fifth Circuit as binding precedent), the court rejected the United States' entreaty to incorporate into the SAA another of the FTCA's exceptions for claims arising out of misrepresentations made by the government, see 28 U.S.C. § 2680(h).  In so doing, the court intimated in dicta that none of the FTCA's exceptions could be incorporated into the SAA.  See De Bardeleben Marine Corp., 451 F.2d at 145-46.  Nonetheless, since that decision, this circuit has joined the majority of others in incorporating the FTCA's discretionary function exception.  See Williams, 747 F.2d at 700.  The district court that authored the decision adopted by this circuit in Williams carefully circumvented De Bardeleben Marine Corp. by predicating its holding on the separation of powers doctrine, reasoning that "sound principles of judicial restraint in the face of governmental administrative activity dictate that cases involving

6

concerning subject matter jurisdiction *de novo*.  See Bishop v. Reno, 210 F.3d

1295, 1298 (11th Cir. 2000).

The FTCA's discretionary function exception preserves the United States'

sovereign immunity against "[a]ny claim . . . based upon the exercise or

performance or the failure to exercise or perform a discretionary function or duty

on the part of a federal agency or an employee of the [United States], whether or

not the discretion involved be abused."  28 U.S.C. § 2680(a) (2000).  The Supreme

Court has articulated a two-part test for determining whether the conduct of a

government agency or employee falls within the scope of this exception.   First, a

reviewing court must ascertain the nature of the challenged conduct and assess

whether it involved an element of judgment or choice.  See United States v.

Gaubert, 499 U.S. 315, 322, 111 S. Ct. 1267, 1273 (1991).  Second, the court

decides "'whether that judgment is of the kind that the discretionary function

exception was designed to shield.'"  Id. at 322-23, 111 S. Ct. at 1273 (quoting

Berkovitz v. United States, 486 U.S. 531, 536, 108 S. Ct. 1954, 1959 (1988)).

---

discretionary functions be removed from the jurisdiction of the courts."  Williams, 581 F. Supp.
at 852.  Courts that have considered the propriety of incorporating the law enforcement
exception, however, have split.  Compare B & F Trawlers, Inc. v. United States, 841 F.2d 626,
628-29 (5th Cir. 1988) (declining to incorporate the exception without mention of the De
Bardeleben Marine Corp. decision) with Green v. United States, 658 F. Supp. 749, 751 (S.D. Fla.
1987) (incorporating the exception, also without mention of the De Bardeleben Marine Corp.
decision).

The United States asserts, and we agree, that the threshold governmental action at issue here is the Customs Service's decision to board and search the vessel. We must therefore examine the statutory and regulatory guidelines governing these activities and determine whether they mandate a particular manner in which to execute them. See Hughes v. United States, 110 F.3d 765, 768 (11th Cir. 1997). According to 19 U.S.C. § 1581(a):

> Any officer of the customs *may* at any time go on board of *any vessel* or vehicle at *any place* in the United States or within the customs waters . . . and examine the manifest and other documents and papers and examine, inspect, and *search the vessel* or vehicle *and every part thereof* and any person, trunk, package, or cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance.

19 U.S.C. § 1581(a) (2000) (emphasis added); see also Boarding & Search of Vessels, 19 C.F.R. § 162.3(a) (1999).[6] This broad grant of authority, particularly

---

[6]The Coast Guard's law enforcement authority is analogous to that of the Customs Service:

> The Coast Guard may make inquires, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States. For such purposes, commissioned, warrant, and petty officers may at any time go on board of any vessel subject to the jurisdiction, or to the operation of any law, of the United States, address inquiries to those on board, examine the ship's documents and papers, and examine, inspect, and search the vessel and use all necessary force to compel compliance.

14 U.S.C. § 89(a) (2000).

8

as embodied in the emphasized language, leaves the Customs Service a great deal of discretion, cabined of course by constitutional constraints, in deciding which vessels to board and search, thus satisfying the first prong of the Gaubert analysis. See Autery v. United States, 992 F.2d 1523, 1529 (11th Cir. 1993) (observing that an unspecific statutory or regulatory guideline implies that discretion was intended).

"Because the purpose of the [discretionary function] exception is to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort," Gaubert, 499 U.S. at 323, 111 S. Ct. at 1273 (internal quotation omitted), we must determine, in applying the second prong of the Gaubert analysis, whether the challenged conduct of the government agency or employee is "susceptible to policy analysis," id. at 325, 111 S. Ct. at 1275. We agree with the United States that the decision to board and search a vessel is the product of the balancing of various compelling policy considerations. The Customs Service shoulders the significant burden of cooperating in the enforcement of this country's anti-narcotics laws. See, e.g., National Drug Interdiction Improvement Act of 1986, Pub. L. No. 99-570, tit. III, § 3002(5), 100 Stat. 3207, 3273-74 (1986) (congressional findings recognizing the role of the Customs Service in narcotics

interdiction). This responsibility naturally influences the manner in which the Customs Service conducts its law enforcement activities.

In a case involving the destruction of a vessel following its apprehension by the Coast Guard on suspicion of narcotics transportation, the Fifth Circuit observed:

> To board, search, and seize any vessel suspected of smuggling narcotics is a sovereign prerogative that has taken on paramount significance in light of the epidemic encroachment of illegal drugs into our country. Congress has declared that "trafficking in controlled substances aboard vessels is a serious international problem and is universally condemned. Moreover, such trafficking presents a specific threat to the security and societal well-being of the United States." 46 U.S.C. § 1902. . . . [W]e seriously doubt that Congress intended to expose the [United States] to liability . . . that would not only inhibit Coast Guard enforcement efforts but would also effectively reallocate scarce law enforcement resources from drug interdiction . . . .

B & F Trawlers, Inc. v. United States, 841 F.2d 626, 631 (5th Cir. 1988). The considerations cited by the Fifth Circuit apply with equal force here. The Customs Service, faced with escalating enforcement duties and limited resources, must decide how best to effectuate our nation's anti-narcotics laws. In so doing, the Customs Service necessarily exercises discretion in choosing whether to board and search a vessel, weighing the costs of implementing such activities against the likelihood of an enforcement success. Cf. Mesa v. United States, 123 F.3d 1435,

10

1438 (11th Cir. 1997) (discussing the law enforcement-related policy concerns attending the execution of an arrest warrant); Ochran v. United States, 117 F.3d 495, 501 (same, in relation to the protection of federal witnesses). The discretionary function exception was designed to prevent judicial "second guessing" of exactly this type of policy-based decision.

Of course, the injury Mid-South alleges cannot be attributed directly to the Custom Service's decision to board and search its vessel. Rather, the act that purportedly caused the injury would had to have occurred during the operational execution of that decision. As the Supreme Court made clear in Gaubert, however, "[d]iscretionary conduct is not confined to the policy or planning level. '[I]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.'" 499 U.S. at 325, 111 S. Ct. at 1275 (quoting United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 813, 104 S. Ct. 2755, 2764 (1984)). Any act, therefore, regardless of the administrative level at which it is authorized or taken, qualifies as "discretionary" provided it satisfies the Gaubert analysis. We therefore agree with the United States that the on-site decisions of the agents of the Customs Service concerning the manner in which to search the vessel also fall within the scope of the discretionary function exception. See Varig Airlines, 467

11

U.S. at 819-20, 104 S. Ct. at 2767-68 (observing that discretionary actions in furtherance of a policy decision are within the scope of the exception). Because no statute or corresponding regulation prescribes the methodology for boarding or searching a vessel,[7] field agents are left to their discretion to devise the best course for executing these functions. In so doing, the agents must balance their overarching goal of locating contraband with such concerns as efficiency and the minimization of intrusion on the privacy and property interests of searched parties. Although the attendant details could be characterized as mundane or as disengaged from any substantial policy consideration, they are nonetheless critical to the performance of the discretionary scheme and, accordingly, are entitled to the protection of the discretionary function exception. Cf. Mesa v. United States, 837 F. Supp. 1210, 1216 (S.D. Fla. 1993), aff'd, 123 F.3d 1435 (11th Cir. 1997) (exhaustively cataloguing the policy-based details attending the execution of an arrest warrant that the court concluded were within the scope of the discretionary function exception). As the Fifth Circuit has cautioned:

---

[7]Mid-South suggests the possible existence of such guidelines and requests that, should we find the discretionary function exception applicable in principle, we remand the case to allow Mid-South an opportunity to conduct sufficient discovery. We decline to do so. Even if, as Mid-South conjectures, pertinent guidelines had required Customs Service agents to exercise due care during their search, such a general proviso would be insufficient to divest the agents of their discretion in devising the course by which to conduct the search. Cf. Irving v. United States, 162 F.3d 154, 163-64 (1st Cir. 1998) (en banc) (reviewing cases involving negligent inspection claims and observing that only specific guidelines detailing how an agent is to perform his or her inspection obviate that agent's discretion)

> [A]lmost any exercise of governmental discretion could be overly parsed so as to focus on minute details of sub-decisions to the point that any relationship to policy would appear too attenuated. But doing that obscures the very purpose of the discretionary function exception. . . . [S]uch tunnel-visioned analyses would render the discretionary function exception nugatory and open virtually every decision that implements a governmental decision to liability . . . .

Baldassaro v. United States, 64 F.3d 206, 211-12 (5th Cir. 1995).

Mid-South contends that although the discretionary function exception may shield the United States from claims arising out of the decision to search or the manner in which the search was conducted, it does not foreclose a claim premised on the discrete act alleged here—the disconnection of the electrical cord powering the vessel's bilge pump. Essentially, Mid-South argues that the record does not establish that the agents searching the vessel made an affirmative decision to disconnect the electrical cord as part of their search, thereby dissociating the act from the agents' exercise of discretion in pursuit of the objectives of the search. Mid-South misapprehends, however, the focus of the Gaubert analysis, which "is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but *on the nature of the actions taken and on whether they are susceptible to policy analysis.*" Gaubert, 499 U.S. at 325, 111 S. Ct. at 1275 (emphasis added). Our inquiry, therefore, is whether, objectively, disconnecting

13

the electrical cord was *conceivably* in furtherance of the search. Because, as the United States hypothesizes, the disconnection of the cord may have been necessary to gain access to areas of the vessel the agents desired to search or else to eliminate a potential safety hazard to the agents, we find that it was. Accordingly, we conclude that the allegedly negligent act, regardless of its impetus, qualifies as a discretionary function within the scope of the exception.[8]

## III. CONCLUSION

Because we hold that the discretionary function exception to the SAA's waiver of the United States' sovereign immunity applies in this case, we AFFIRM the district court's ultimate conclusion that it lacked subject matter jurisdiction over Mid-South's claim. We therefore need not consider whether that waiver is also subject to the FTCA's law enforcement exception.

---

[8]Insofar as Mid-South separately challenges the agents' failure to investigate the purpose of the electrical cord before disconnecting it or to reconnect the cord at the conclusion of their search, we find that these constitute nothing more than purported abuses of the agents' discretion in conducting the search and therefore, according to the terms of the exception, are also not actionable. See 28 U.S.C. § 2680(a); Dalehite v. United States, 336 U.S. 33-34, 73 S. Ct. 956, 967 (1953).