[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13845

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 19, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-10048-CV-JEM

AUGUSTIN URALDE,
individually and as Personal Representative
of the Estate of Anay Machado Gonzalez,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 19, 2010)

Before BLACK, WILSON and COX, Circuit Judges.

BLACK, Circuit Judge:

Augustin Uralde sued the United States on behalf of himself and of the estate of his deceased wife, Anay. Uralde alleges his wife died as a result of the Coast Guard's failure to provide her access to timely medical treatment after she was injured during the Coast Guard's interdiction of their vessel. The district court found that to bring his claims against the United States, Uralde had to meet the prerequisites for the sovereign-immunity waiver found in the Public Vessels Act (PVA), 46 U.S.C. §§ 31101–31113. Under the PVA, the United States waives sovereign immunity in cases brought by foreign nationals only if the plaintiff's country of citizenship has reciprocity with the United States on similar claims. The district court found that Uralde failed to demonstrate reciprocity. As a result, the court then concluded that Uralde could not bring his suit against the United States and dismissed the case for lack of subject-matter jurisdiction.

Uralde appealed, contending the applicable sovereign-immunity waiver was found not in the PVA, but in the Suits in Admiralty Act (SAA), 46 U.S.C. §§ 30901–30918, which contains no reciprocity requirement.[1] The issue on appeal is whether Uralde's claims fall under the SAA or the PVA.

## I. BACKGROUND

---

[1] At oral argument, counsel for Uralde abandoned the argument that the suit fell under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671–2680. This concession was in harmony with our own legal conclusion.

Uralde and his wife, both Cuban nationals, were passengers on board a speedboat, the Carrera, which was attempting to illegally enter the United States carrying several Cuban citizens. The Coast Guard dispatched a boat to intercept the Carrera. A high-speed chase ensued, ending when a Coast Guard officer fired two shotgun rounds into the Carrera's engine, causing it to stop suddenly. The sudden stop caused Uralde's wife, Anay, to strike her head on the side of the vessel. Uralde does not allege the Coast Guard was negligent in its interdiction of the Carrera. His allegations are aimed at the subsequent decisions made by Coast Guard personnel regarding whether and how to provide Anay with access to medical treatment.

When Coast Guard members boarded the Carrera, Anay was bleeding from the head, nose, and ears, her breath was shallow, and she was unconscious. Uralde alleges he and the other passengers pled with Coast Guard personnel to use one of the helicopters hovering over the scene to airlift Anay to a hospital for immediate medical attention. Uralde alleges the sea-based Coast Guard personnel radioed Coast Guard officers at Station Key West requesting permission to airlift Anay, but the Key West officers twice denied the request. An hour later, a physician's assistant arrived on board the Carrera. He evaluated Anay's condition and also recommended Anay be airlifted to a medical facility for help. Station Key West personnel again denied the

request. Eventually, the Coast Guard permitted Anay to be taken ashore on an inflatable boat for treatment, but Anay died in transit before she reached land.

Uralde filed suit against the United States on behalf of himself and of Anay's estate. In his complaint, he alleges the Coast Guard was negligent in: (1) failing to provide Anay with proper on-scene medical care, (2) refusing Anay timely transportation via patrol boat or helicopter to a hospital for immediate medical care, (3) choosing to provide Anay with an inferior mode of transportation to the hospital, and (4) unreasonably delaying the diagnosis of Anay's medical needs.

Uralde originally contended the federal courts had jurisdiction to hear the case based on the sovereign-immunity waiver found in the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671–2680, or, alternatively—should the suit sound in admiralty—under the SAA. Pursuant to a motion to dismiss by the Government, the district court found that the case sounded in admiralty, but fell under the PVA, rather than the SAA. The court further found that Uralde had failed to show, as required of foreign nationals suing under the PVA, that his country of citizenship, Cuba, would reciprocally allow United States citizens to sue under similar circumstances. *See* 46 U.S.C. § 31111. Uralde was, therefore, unable to sustain a claim under the PVA. As a result, the district court dismissed Uralde's case for lack of subject-matter jurisdiction.

4

## II.  ANALYSIS

Until the early twentieth century, admiralty claims seeking redress for injuries caused by a vessel of the United States could proceed only if Congress passed a private bill authorizing the suit.  *Marine Coatings of Ala. v. United States*, 71 F.3d 1558, 1560 (11th Cir. 1996).  The number of private claimants seeking redress increased significantly after the United States' acquisition of a large fleet of merchant vessels during World War I.  *Id.* Congress enacted the SAA in 1920, in part, to address these claims.  *Id.*  The SAA waived the United States' sovereign immunity for admiralty claims in personam against the United States arising out of incidents involving the United States' merchant vessels.  *Id.* (quoting SAA § 2, 41 Stat. at 525–26 (codified as amended at 46 U.S.C. App. § 742)).  The Act, however, did not waive sovereign immunity as to claims arising out of incidents caused by "public vessels."[2]  *Id.*

A waiver for claims seeking damages caused by public vessels was not provided until 1925, when the PVA was passed.  *Id.*   Unlike the SAA, the PVA contains a reciprocity requirement, which provides that a foreign national may not maintain a civil action under the PVA, "unless it appears to the satisfaction of the

_____

[2]A public vessel "(A) is owned, or demise chartered, and operated by the United States Government or a government of a foreign country; and (B) is not engaged in commercial service." 46 U.S.C. § 2101(24).

court . . . that the government of that country, in similar circumstances, allows nationals of the United States to sue in its courts." 46 U.S.C. § 31111.

Substantively, the PVA waives the United States' sovereign immunity with regard to admiralty claims in personam for "damages caused by a public vessel of the United States." 46 U.S.C. § 31102(a)(1). The Supreme Court has held that claims for damages "caused by a public vessel," include not just those cases in which the vessel is the physical instrument causing the damage, but also "cases where the negligence of the personnel of a public vessel *in the operation of the vessel* causes damage to other ships, their cargoes, and personnel." *Canadian Aviator, Ltd. v. United States*, 324 U.S. 215, 224–25, 65 S. Ct. 639, 644 (1945) (emphasis added) (holding the PVA applied when Coast Guard personnel instructed a private vessel to follow a Coast Guard ship through unfamiliar waters where the private vessel struck a submerged wreck). In explaining *Canadian Aviator*'s more expansive interpretation of the PVA's waiver, the Supreme Court reasoned "[t]here seems no logical reason for allowing recovery for collision and refusing recovery for damages caused by *other movements* of the offending vessel." *Id.* at 225, 65 S. Ct. at 644 (emphasis added).

In 1960, the SAA was amended, eliminating the "merchant vessel" limitation to its waiver. *Marine Coatings*, 71 F.3d at 1560–61. The statute currently states:

6

> In a case in which, if a vessel were privately owned or operated, or if cargo were privately owned or possessed, or if a private person or property were involved, a civil action in admiralty could be maintained, a civil action in admiralty in personam may be brought against the United States. . . .

46 U.S.C. § 30903(a). Due to the 1960 amendment, the broad waiver language of the SAA seemed to encompass claims for "damages caused by a public vessel," claims which were covered under the PVA. However, the Supreme Court has determined the SAA amendment was not meant to "render nugatory the provisions of the Public Vessels Act," thereby allowing claimants to avoid the PVA's more stringent requirements. *United States v. United Cont'l Tuna Corp.*, 425 U.S. 164, 178, 96 S. Ct. 1319, 1327 (1976). Rather, "claims within the scope of the Public Vessels Act remain subject to its terms after the 1960 amendment to the Suits in Admiralty Act." *Id.* at 181, 96 S. Ct. 1329.

Thus, together, the sovereign immunity waivers of the PVA and SAA now cover all relevant admiralty claims involving public vessels. Claims seeking relief for damages caused directly by a public vessel, or by the negligent operation thereof, fall under the PVA. The SAA covers all remaining admiralty claims, including those simply "*involving* public vessels." *Marine Coatings*, 71 F.3d at 1562 n.5 (emphasis added). Accordingly, when Coast Guard personnel are negligent in performing

7

functions other than those "in the operation of"[3] public vessels, the claims arising from those acts fall under the SAA, rather than the PVA. *See Mid-South Holding Co. v. United States*, 225 F.3d 1201 (11th Cir. 2000) (analyzing a claim of the Coast Guard's negligence during a search of the claimant's private vessel under the SAA); *Taghadomi v. United States*, 401 F.3d 1080, 1090 (9th Cir. 2005) (holding the SAA, rather than the PVA, applies to a claim that the Coast Guard negligently failed to notify persons with adequate rescue resources that a kayaker was stranded at sea); *Sagan v. United States*, 342 F.3d 493 (6th Cir. 2003) (analyzing under the SAA a claim that the Coast Guard exacerbated a person's previously incurred injuries by making negligent and untimely decisions during the rescue).

On appeal, the Government urges us to accept the district court's conclusion that the PVA applies to Uralde's claims because the incident out of which the claims arose *involved* a public vessel. Uralde contends the PVA is inapplicable because, despite the public vessel's involvement, it did not *cause* the damages alleged.[4]

It is undisputed that the Coast Guard ship used in the interdiction of the Carrera is a public vessel. Uralde, however, does not seek damages for any injury caused by

---

[3]Although we recognize this phrase will likely need further clarification, such clarification is not required to resolve this case.

[4] The difficulty of parsing through counsels' shifting presentations of facts and theories has caused us to empathize with the district court, which we are certain experienced similar frustration. After much study, contemplation, and the benefit of oral argument, however, we conclude this is a fair and succinct statement of the parties' positions.

the vessel itself or by the negligent operation thereof. None of the relevant Coast Guard members were operating, or even aboard, a public vessel at the time the allegedly negligent acts transpired. Instead they were stationed on land or were aboard a private vessel, the Carrera, when the decisions regarding Anay's treatment and transportation were made.

Uralde's first theory of negligence is that the Coast Guard "[f]ail[ed] to provide Anay with appropriate emergency medical care and treatment on scene *after* the Coast Guard personnel boarded the Carrera and discerned that Anay required same." (emphasis added). This theory is similar to Uralde's fourth negligence theory—that the Coast Guard "[u]nreasonably delay[ed] the determination as to whether, when, and how to obtain appropriate medical care and treatment for Anay." The SAA applies to both sets of allegations because, although Coast Guard members (including sea-based personnel comprising the crew of a public vessel) were allegedly responsible for the failure to timely diagnose and properly treat Anay, no negligence regarding Anay's medical care was committed *in the operation of the public vessel* (or even *on* a public vessel).

These two theories are based on facts similar to those in *Mid-South Holding Co.*, 225 F.3d 1201. In *Mid-South*, the plaintiffs sued the Government after the Coast Guard negligently disconnected a ship's bilge pump during a search, causing the ship

9

to sink. *Id.* at 1203. Although it did not appear to be a point of contention, the Eleventh Circuit accepted that the claim was properly brought under the SAA. Under the holding of *Canadian Aviator*, this was proper. As in Uralde's case, in *Mid-South* the negligent act was committed by Coast Guard personnel not while operating a public vessel, but while performing tasks after the Coast Guard members had boarded a claimant's private vessel. The damage was not caused by the public vessel, nor were the negligent acts committed in the operation of the public vessel; therefore, the claims in *Mid-South*, like Uralde's first and fourth theories, properly fell under the SAA.

Uralde's second theory of negligence—that the Coast Guard "[f]ail[ed] to promptly transport Anay to a shore-side medical facility for appropriate emergency medical care and treatment via the available helicopter(s) and/or patrol boat(s) that were on scene"—also falls under the SAA. The act under scrutiny is the decision to withhold resources. As with Uralde's first and fourth theories, the negligence alleged in his second theory was committed by land-based Coast Guard personnel or personnel who had left the public vessel and were no longer performing acts associated with its operation.

Uralde's third theory of negligence is that the Coast Guard "[e]xacerbat[ed] Anay's injuries by attempting to transport Anay to a shore-side medical facility via

10

a slow, rigid-bottom inflatable vessel in rough seas." Considering the complaint as a whole, the third theory of negligence does not allege that transporting Anay in the flat-bottomed boat was negligent in and of itself. Instead, Uralde contends use of the boat was negligent only because of the availability of better options. For example, Uralde alleges it was necessary to transport Anay to shore for medical treatment, and to do so as soon as possible. Uralde does not contend that the Coast Guard should have waited for the sea to calm before transporting Anay, nor does he allege the flat-bottomed boat was operated in a negligent manner. He alleges only that Anay would have had a "much better chance" of survival had she received advanced medical care earlier, and that the helicopters and patrol boats at the scene could have transported her more quickly and safely.

Thus, Uralde's third theory of negligence is best construed as a restatement of his second theory: the Coast Guard was negligent in its decision *not* to use a helicopter or patrol boat to transport Anay. At oral argument, Uralde's counsel confirmed that this was an accurate representation of the claim. Uralde's third claim is centered on a shore-based decision as to whether to allocate patrol boats or helicopters to Anay's rescue. Therefore, we conclude that Uralde's third theory, like the second, falls under the SAA.[5]

_____

[5] When questioned at oral argument, the Government did not assert that Uralde's claims regarding the use of the flat-bottomed boat brought the case under the PVA. In fact, at argument,

11

All four of Uralde's negligence theories are based in the Coast Guard's decisions regarding whether and how to provide proper care and timely access to medical treatment of a passenger on a private vessel interdicted at sea. Because such decisions are distinct from the operation of a public vessel, neither the PVA nor its reciprocity requirement applies. The SAA, therefore, applies to Uralde's admiralty claims. *See Marine Coatings*, 71 F.3d at 1562 n.5. Because the SAA does not include a reciprocity requirement, Uralde had no obligation to demonstrate that Cuba would allow Americans to sue its government on similar claims. The district court, therefore, erred in dismissing Uralde's claims for failure to demonstrate reciprocity.[6]

## IV. CONCLUSION

The district court has subject-matter jurisdiction based on the sovereign-immunity waiver provided in the SAA. We, therefore, reverse and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

the Government was hard pressed to remember if the flat-bottomed boat was a Coast Guard vessel at all.

[6] We offer no opinion as to the merits of this case or any potential defenses. We merely answer the question of which statute provides the sovereign-immunity waiver relevant to Uralde's complaint.