[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-13661
Non-Argument Calendar

_____

D.C. Docket No. 4:13-cv-10157-JEM

ALEXIS VIERA BORGES,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 13, 2016)

Before HULL, MARCUS and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Alexis Borges appeals the judgment against his complaint that the United States Coast Guard was negligent in waiting two days to evacuate him for medical treatment after it intercepted a boat on which he and other passengers were attempting to enter the United States illegally from Cuba. Borges argues that the district court applied an improper standard of care in determining whether the Coast Guard was negligent and disregarded testimony from his expert witnesses. The United States argues that the district court should have dismissed Borges's complaint for lack of subject matter jurisdiction. Because the district court had jurisdiction to adjudicate Borges's complaint, and the evidence supports its finding that the Coast Guard was not negligent, we affirm.

The United States argues that Borges failed to satisfy a precondition for a waiver of sovereign immunity to maintain his action under the Public Vessels Act, but the district court correctly determined that the Public Vessels Act did not govern Borges's complaint. Under the Public Vessels Act, "[a] national of a foreign country may not maintain a civil action [against the United States in personam in admiralty for damages caused directly by a public vessel] unless the government of that [foreign] country, in similar circumstances, allows nationals of the United States to sue in its courts." 46 U.S.C. §§ 31102(a)(1), 31111. The Supreme Court has interpreted "the phase 'caused by a public vessel'" as including when "the vessel was the physical instrument that caused the physical damage"

2

and when "the vessel . . . caus[ed] the harm although the actual cause is the negligence of the personnel in the operation of the ship" because it would be illogical to "allow[] recovery for collision and refus[e] recovery for damages caused by other movements of the offending vessel." *Canadian Aviator v. United States*, 324 U.S. 215, 224, 225 (1945). Borges did not seek damages for an injury caused by the Coast Guard vessel or by its negligent operation. Borges alleged that he developed a chronic bone infection and "numerous complications" because medical personnel onboard the vessel treated his broken and lacerated ankle instead of evacuating him to a hospital. As we held in *Uralde v. United States*, 614 F.3d 1282 (11th Cir. 2010), a complaint "based [on] the Coast Guard's decisions regarding whether and how to provide proper care and timely access to medical treatment of a passenger on a private vessel interdicted at sea" is "distinct from the operation of a public vessel" so "neither the [Public Vessels Act] nor its reciprocity requirement applies." *Id.* at 1288.

Borges's complaint fell within the scope of the waiver of sovereign immunity in the Suits in Admiralty Act, which "covers all remaining admiralty claims, including those simply *involving* public vessels," *id.* at 1286 (internal quotation marks and citation omitted). *See* 46 U.S.C. § 30903(a). Because Borges complained that "Coast Guard personnel [were] negligent in performing functions other than those 'in the operation of' public vessels, . . . [his complaint] f[e]ll under

the [Suits in Admiralty Act], rather than the [Public Vessels Act]." *See Uralde*, 614 F.3d 1288. The district court had jurisdiction to adjudicate Borges's complaint.

Borges argues that the district court erred by evaluating the medical personnel under the standard of care applied to good samaritans, but we need not address that issue. We can readily affirm based on the finding of the district court that there was "no evidence . . . of negligence on the part of the Coast Guard or its personnel."

Federal law provides that "[i]n order to render aid to distressed persons . . . the Coast Guard may perform any and all acts necessary to . . . aid persons," 14 U.S.C. § 88(a)(1), when and where "Coast Guard facilities and personnel are available and can be effectively utilized," *id.* § 88(b)(1). Under maritime law, "a shipowner owes the duty of exercising reasonable care to[] those lawfully aboard the vessel who are not members of the crew." *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959). To prove negligence, Borges had to establish that the Coast Guard owed him a duty that it breached and that was the proximate cause of his injury and that he "suffered actual harm." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1253 (11th Cir. 2014).

We cannot say the district court clearly erred in finding that the medical personnel "provided reasonable medical treatment" and that there was "no evidence . . . of negligence." *See Krys v. Lufthansa German Airlines*, 119 F.3d

4

1515, 1525 (11th Cir. 1997). Borges arrived on the Coast Guard vessel with a laceration on his right ankle that exposed the bone, after which medical personnel, as the district court stated succinctly, "cleansed [Borges's] wound, closed the wound to prevent . . . interference from further debris, provided [him] with antibiotics, continuously monitored [his] condition, and quickly evacuated [him]" when he exhibited "an elevated blood pressure, temperature, and heart rate." At the hospital, Borges underwent an x-ray and was discharged two hours later with instructions to treat the wound and to visit an orthopedic surgeon.

Borges also argues that the district court erroneously disregarded testimony from his expert witnesses, but we disagree. In its order, the district court recounted that Borges's "expert witness Dr. Jan Pieter Hommen stated [in her deposition] that administering Rocephin [to guard against possible infection] was appropriate" and that "expert witness nurse Michele Myers-Glower [testified] that administering the antibiotic Rocephin within three hours of [Borges] coming aboard the [Coast Guard vessel] complied with her understanding of the applicable nursing standard of care." Myers-Glower testified that it fell below the standard of care not to evacuate Borges within six hours of assessing his wound, but she stated on cross-examination that using saline to irrigate Borges's wound was proper; there was no evidence that the Coast Guard used any non-sterile equipment on Borges; the medical personnel closed Borges's wound with staples to prevent further injury in

5

the event he was transported by boat; and physicians at the hospital did not detect that Borges's ankle was infected. Although a third expert, Dr. H. Barry Baker, an infectious disease specialist, testified that the decision not to immediately transfer Borges fell below the standard of care and that the delay was a primary factor in Borges's complications, the district court apparently discounted the doctor's testimony because he "admitted that he could not speak to the applicable standard of care aboard" a Coast Guard vessel. Overall, the testimony of Borges's expert witnesses supported the finding that the treatment administered by the medical personnel was not the proximate cause of Borges's infection. *See Franza*, 772 F.3d at 1253.

We **AFFIRM** the judgment in favor of the United States.