[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 5, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-10685

_____

D. C. Docket No. 04-00561-CV-CB-M

EDDIE TYRONE CRANFORD,

Plaintiff-Counter-
Defendant-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Counter-
Claimant-Third-Party-
Plaintiff-Appellee,

versus

HOWARD MELECH,
DIANE G. MELECH,
as Personal Representative and
Administratrix of the Estate of
Ronald C. Melech, deceased,

Third-Party-Defendants-
Appellants.

_____

Appeals from the United States District Court
for the Southern District of Alabama
_____

**(October 5, 2006)**

Before BIRCH, PRYOR and FAY, Circuit Judges.

PRYOR, Circuit Judge:

The issue in this appeal is whether the "discretionary function exception" to the waivers of sovereign immunity in the Suits in Admiralty Act and the Public Vessels Act applies to decisions of federal officials in marking and choosing not to remove a submerged wreck. Eddie Tyrone Cranford, Howard Melech, and Diane Melech filed complaints against the United States regarding personal injuries and death suffered in an allision of a pleasure boat and a submerged wreck. Their complaints alleged negligence by the government, and the district court dismissed the complaints for lack of subject matter jurisdiction. Because we conclude the marking of a submerged wreck and the refusal to remove it are discretionary decisions grounded in social, political, and economic policy, we affirm.

## I. BACKGROUND

On August 9, 2003, a seventeen-foot motor boat operated by Ronald Melech and carrying Howard Melech and Eddie Cranford struck a submerged object in

Mobile Bay, approximately 100 yards north of Fort Morgan beach. At the time of the allision, the boat was traveling eastward parallel to the shore at approximately 30 miles an hour. Upon impact, Cranford and Ronald Melech were thrown from the boat and injured. Cranford was injured, and Ronald Melech died. Howard Melech, who was also injured, helped Cranford back into the boat, but Ronald Melech's body was not found until the next day.

The motor boat struck a submerged vessel, known as the Fort Morgan Wreck. Where closest to the surface of the water, the wreck is between 6 and 18 inches below the surface. The Melechs and Cranford presented evidence, which the district court concluded is likely to be admissible, that the submerged wreck is a former United States Army Mine Planter deliberately sunk in the 1930s by the federal Works Progress Administration to serve as a breakwater. The government asserts that it does not know if these facts are accurate.

The Coast Guard initially charted and marked the wreck in 1992 with a temporary lighted buoy. In 1996, the Coast Guard replaced the temporary buoy with a telephone-pole-type piling, driven into the bed of Mobile Bay approximately 164 feet north-northwest of the part of the wreck closest to the surface. The piling bore two orange and white signs with the words "Danger Wreck." Over the years, the Coast Guard received reports of vessels striking the

wreck despite the marking. After a request from the Alabama Department of Conservation, the Coast Guard again modified the marker on August 5, 2003, and replaced the signs with a flashing light and a six-foot-wide red triangle with the letters "WR2." At the time of the allision, the marker consisted of the piling, the flashing light, and the red triangle.

Cranford, Howard Melech, and Diane Melech, the wife of the deceased Ronald Melech, filed separate complaints against the government in federal court, which were consolidated for purposes of discovery. They alleged that negligence of the government in marking the Fort Morgan Wreck and in refusing to remove it caused the death of Ronald Melech and personal injuries to Cranford and Howard Melech. They alleged that the district court had jurisdiction over their claims under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680, the Suits in Admiralty Act, 46 U.S.C. app. §§ 741-52, the Public Vessels Act, 46 U.S.C. §§ 781-90, and the Wreck Act, 33 U.S.C. §§ 409, 411, 412, 414 and 415.

The government moved to dismiss the complaints for lack of subject matter jurisdiction on the ground that the United States had not waived its sovereign immunity. The district court granted the motions. The district court relied on United States v. Gaubert, 499 U.S. 315, 111 S. Ct. 1267 (1991), and concluded that the marking of the Fort Morgan Wreck and refusal to remove it fell within the

4

"discretionary function exception" of the Federal Tort Claims Act, see 28 U.S.C. § 2680(a), and that the waivers of sovereign immunity in the Suits in Admiralty Act and the Public Vessels Act did not apply.

## II. STANDARD OF REVIEW

"We review de novo the district court's dismissal of the action for lack of subject matter jurisdiction." Ochran v. United States, 117 F.3d 495, 499 (11th Cir. 1997). "[W]e view the facts in the light most favorable to the plaintiff." Parise v. Delta Airlines, Inc., 141 F.3d 1463, 1465 (11th Cir. 1998).

## III. DISCUSSION

To resolve this appeal, we must address three matters: (1) the legal standard for the discretionary function exception; (2) whether the marking of the Fort Morgan Wreck falls within the exception; and (3) whether the refusal to remove the wreck falls within the exception. Although the parties are in sharp conflict on every issue, we agree with the arguments of the government and the decision of the district court.

*A. The Discretionary Function Exception Is Governed*
*by Gaubert, Not Drake Towing.*

The United States is immune from suit unless it consents to be sued. United States v. Sherwood, 312 U.S. 584, 586, 61 S. Ct. 767, 769 (1941). The Suits in Admiralty Act (SAA), 46 U.S.C. app. §§ 741-52, provides a waiver of sovereign

5

immunity and the "sole jurisdictional basis for admiralty claims against the United States," Mid-South Holding Co., Inc. v. United States, 225 F.3d 1201, 1203 (11th Cir. 2000), that do not involve public vessels, see Marine Coatings of Ala., Inc. v. United States, 71 F.3d 1558, 1560-61 & n.3 (11th Cir. 1996). The Public Vessels Act (PVA), 46 U.S.C. §§ 781-90, provides a waiver of sovereign immunity for admiralty claims involving public vessels. Both waivers are subject to the discretionary function exception of the Federal Tort Claims Act (FTCA). See Mid-South Holding, 225 F.3d at 1203-04 (applying exception to waiver in SAA); U.S. Fire Ins. Co. v. United States, 806 F.2d 1529, 1535 (11th Cir. 1986) (applying exception to waiver in PVA).

Because the government has raised a factual challenge to subject matter jurisdiction, the Melechs and Cranford must establish that the discretionary function exception does not apply. See OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002). The Supreme Court in Gaubert "developed a two-step test to determine whether the government's conduct meets the discretionary function exception." Miles v. Naval Aviation Museum Found., Inc., 289 F.3d 715, 720 (11th Cir. 2002) (citing Gaubert, 499 U.S. at 322-23, 111 S. Ct. at 1273-74). We consider first whether the conduct involves "'an element of judgment or choice,'" OSI, Inc., 285 F.3d at 950 (quoting Gaubert, 499 U.S. at 322, 111 S. Ct. at 1273),

6

which will be the case unless "'a federal statute, regulation, or policy specifically prescribes a course of action embodying a <u>fixed</u> or <u>readily ascertainable</u> standard.'" <u>Hughes v. United States</u>, 110 F.3d 765, 768 (11th Cir. 1997) (quoting <u>Autery v. United States</u>, 992 F.2d 1523, 1529 (11th Cir. 1993)).  The conduct need not be "confined to the policy or planning level."  <u>Gaubert</u>, 499 U.S. at 325, 111 S. Ct. at 1275.

We then ask whether the judgment or choice is grounded in considerations of public policy, because  the "purpose of the [discretionary function] exception is to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'"  <u>Id.</u> at 322-23, 111 S. Ct. at 1273-74 (quoting <u>United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)</u>, 467 U.S. 797, 814, 104 S. Ct. 2755, 2765 (1984)).  "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a [g]overnment agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion."  <u>Id.</u> at 324, 111 S. Ct. at 1274.  Our inquiry does not focus either on the subjective intent of the government agent, <u>id.</u> at 325, 111 S. Ct. at 1275, or on whether the agent actually weighed policy considerations, <u>OSI, Inc.</u>, 285 F.3d at 950-51, but "on the nature of the actions

7

taken and on whether they are susceptible to policy analysis," Gaubert, 499 U.S. at 325, 111 S. Ct. at 1275. To succeed, the Melechs and Cranford must establish "that the challenged actions are not the kind of [discretionary] conduct that can be said to be grounded in the policy of the regulatory regime." Id. Such conduct includes, for example, "dr[iving] an automobile on a mission connected with . . . official duties." Id. at 325 n.7, 111 S. Ct. at 1275 n.7.

The Melechs and Cranford contend that we should be guided by two of our earlier decisions: Drake Towing Co., Inc. v. Meisner Marine Construction Co., 765 F.2d 1060 (11th Cir. 1985), and U.S. Fire Insurance Co. v. United States, 806 F.2d 1529. We disagree. Our holdings in Drake Towing and U.S. Fire Insurance both turned expressly on the principle that "operational" conduct falls outside the discretionary function exception, see Drake Towing, 765 F.2d at 1064; U.S. Fire Insurance, 806 F.2d at 1535-37, and the Supreme Court rejected that principle in Gaubert. See 499 U.S. at 326, 111 S. Ct. at 1275; see also Autery, 992 F.2d at 1527. We do not follow precedents that are "clearly inconsistent" with an intervening decision of the Supreme Court. See Garrett v. Univ. of Ala. at Birmingham Bd. of Trs., 344 F.3d 1288, 1292 (11th Cir. 2003).

The Melechs and Cranford would have us rule that the discretionary function exception does not apply to the execution of a governmental decision, but this

8

argument merely restates the operational conduct distinction rejected in Gaubert.

The Melechs and Cranford rely on Indian Towing Co. v. United States, 350 U.S.

61, 76 S. Ct. 122 (1955), and contend that the discretionary function exception

does not apply "once the [g]overnment exercise[s] its discretion to warn the public

of a danger, [because] it ha[s] a mandatory 'hornbook tort law' obligation to

perform its task 'in a careful manner.'" This argument fails. We have previously

explained that "[t]his interpretation of Indian Towing . . . has been severely

undercut, if not altogether disavowed, by the Supreme Court in Gaubert," Ochran,

117 F.3d at 505, and in any event, the government did not invoke the discretionary

function exception in Indian Towing, see Monzon v. United States, 253 F.3d 567,

572 (11th Cir. 2001).

### B. The Marking of the Fort Morgan Wreck Falls Within the Discretionary Function Exception.

The Melechs and Cranford challenge several decisions of the Coast Guard in

marking the Fort Morgan Wreck, such as placing the marker 164 feet away from

the wreck and using only one marker, but all of these decisions involved elements

of judgment or choice. The pertinent statute, regulations, and internal policy allow

the Coast Guard broad discretion in deciding how to mark a wreck. The statute

that grants the Coast Guard authority to mark wrecks provides, "The Secretary may

mark . . . any sunken vessel or other obstruction existing on the navigable

9

waters . . . of the United States <u>in such manner and for so long as, in his judgment,</u> the needs of maritime navigation require." 14 U.S.C. § 86 (emphasis added). The relevant regulations provide that the Coast Guard "<u>may</u> mark for the protection of maritime navigation any structure, sunken vessel or other obstruction that is not suitably marked by the owner." 33 C.F.R. § 64.33(a) (emphasis added). The Aids to Navigation Administration Manual ("ATON Manual"), which contains internal guidelines of the Coast Guard regarding the marking of wrecks, states that "the Coast Guard retains the discretion to deviate or authorize deviation from" its "requirements." The ATON Manual creates "no duties or obligations to the public to comply with the procedures" described in it, and the ATON Manual states that "no member of the public should rely upon the[] procedures as a representation by the Coast Guard as to the manner of performance of [the] aids to navigation mission." The Melechs and Cranford fail to identify "'a federal statute, regulation, or policy [that] specifically prescribes a course of action embodying a <u>fixed</u> or <u>readily ascertainable</u> standard.'" <u>Hughes</u>, 110 F.3d at 768 (quoting <u>Autery</u>, 992 F.2d at 1529).

The closer question is whether the decisions of the Coast Guard in marking the Fort Morgan Wreck were "susceptible to policy analysis" and "the kind of conduct that can be said to be grounded in the policy of the regulatory regime."

Gaubert, 499 U.S. at 325, 111 S. Ct. at 1275. The government persuasively explains that decisions in marking a wreck involve social, political, and economic policy considerations, such as taking into account the knowledge and customs of international mariners, balancing the needs of pleasure and commercial watercraft, and evaluating agency resource constraints, which include but are not limited to financial concerns. The Melechs and Cranford respond that these considerations are not "true policy judgments." They assert that these considerations are merely the application of professional standards, not policy decisions; all discretionary conduct by the government involves budgetary considerations; and none of the asserted considerations implicate "national policy."

We agree with the government for three reasons. First, the contention that the Coast Guard applied professional standards "is just another way of saying that the considerations . . . are so precisely formulated that decisions at the operational level never involve the exercise of discretion within the meaning of [the discretionary function exception], a notion that [the Supreme Court] ha[s] . . . rejected." Id. at 331, 111 S. Ct. at 1278. It "may be that certain decisions resting on mathematical calculations, for example, involve no choice or judgment in carrying out the calculations," but the decisions of the Coast Guard in marking a wreck "are not of that genre." Id. Second, although "[w]e recognize that . . .

11

budgetary constraints are almost always important to government decisions," Ochran, 117 F.3d at 502, and "[f]inancial considerations alone may not make a decision one involving policy," Hughes, 110 F.3d at 769, the decisions of the coast guard involved more than financial considerations. Third, nothing in our case law supports the Melechs' and Cranford's assertion that policy considerations must implicate "national" policy. The Melechs and Cranford ask us to review evidence regarding the actual considerations of the decisionmakers for the Coast Guard, but we do not focus either on the subjective intent of the government agents, Gaubert, 499 U.S. at 325, 111 S. Ct. at 1275, or on whether the agents actually weighed policy considerations, OSI, Inc., 285 F.3d at 950-51.

*C. The Decision Not To Remove the Fort Morgan Wreck Falls*
*Within the Discretionary Function Exception.*

The Melechs and Cranford also challenge the refusal of the government to remove the Fort Morgan Wreck. They contend that this decision fails the first step of the Gaubert test because a section of the Wreck Act, 33 U.S.C. § 409, allegedly imposes a nondiscretionary duty on the government to remove the Fort Morgan Wreck. The Melechs and Cranford assert that the government, as the alleged owner of the sunken vessel, must "commence the immediate removal of [the vessel] and prosecute such removal diligently." 33 U.S.C. § 409. We disagree.

Although we view in the light most favorable to the Melechs and Cranford

12

the evidence that the government deliberately sank the vessel for a legitimate public purpose, the removal requirement in the Wreck Act does not apply to the government in this circumstance. Cf. Chute v. United States, 610 F.2d 7, 11 (1st Cir. 1979) (concluding that deliberate creation of a wreck by government for Navy target practice not subject to Wreck Act). The Wreck Act became law as part of the Rivers and Harbors Appropriation Act of 1899, and it must be read together with the other sections of that statute. See Swain v. Schweiker, 676 F.2d 543, 546 (11th Cir. 1982) ("[S]tatute must be considered as a whole . . . ."). Section 409 specifically prohibits the obstruction of navigable waters by vessels and requires owners promptly to remove sunken vessels, but an earlier section of the statute, section 403, speaks to "[o]bstruction of navigable waters generally" and provides that the government may authorize the creation of obstructions, including breakwaters. 33 U.S.C. § 403 (emphasis added). Were section 403 not to exist, it would be absurd to read section 409 to require the government immediately to remove a vessel that it deliberately sank for a public purpose. See Regions Bank v. Provident Bank, Inc., 345 F.3d 1267, 1276 (11th Cir. 2003) ("[T]he Supreme Court has repeatedly held that '[i]f possible, [a court] should avoid construing [a] statute in a way that produces [ ] absurd results.'" (quoting Dewsnup v. Timm, 502 U.S. 410, 427, 112 S. Ct. 773, 783 (1992))); see also Green v. Bock Laundry Mach. Co.,

13

490 U.S. 504, 527, 109 S. Ct. 1981, 1994 (1989) (Scalia, J., concurring) (noting that a statute must be construed to avoid "unthinkable" and "bizarre" results). In addition, the last clause of section 409 evidences that the removal requirement does not apply to the government in any circumstance, because failure to comply with that requirement subjects a sunken vessel to discretionary removal by the government. 33 U.S.C. § 409 (stating that failure to remove a sunken vessel "shall be considered as an abandonment" of the vessel and "subject the [vessel] to removal by the United States"); see also Buffalo Bayou Transp. Co. v. United States, 375 F.2d 675, 677 (5th Cir. 1967) (holding that section 409 does not require the United States to remove "each sunken vessel in navigable waters").

The remaining issue involves whether the refusal of the government to remove a wreck that it intentionally sank for a public purpose necessarily implicates public policy. The Melechs and Cranford understandably offer no argument that this decision was not "susceptible to policy analysis." Gaubert, 499 U.S. at 325, 111 S. Ct. at 1275. We conclude that the decision not to remove the wreck is shielded from judicial second-guessing by the discretionary function exception.

## IV. CONCLUSION

The dismissal of the complaints of the Melechs and Cranford is

**AFFIRMED.**