**Bruce CRAWFORD, et al., Plaintiffs,**

v.

**ELECTRIC BOAT CORP. and United States of America, Defendants.**

**No. 3:06CV01853(DJS).**

United States District Court, D. Connecticut.

Oct. 5, 2007.

John Joseph Walsh, Thomas M. Canevari, Freehill, Hogan & Mahar, New York City, Pamela L. Schultz, Freehill Hogan & Mahar, LLP, Darien, CT, Michelle Terry Delemarre, Robert E. Kelly, U.S. Department of Justice, Washington, DC, Lisa E. Perkins, U.S. Attorney's Office, Hartford, CT, for Defendants.

### MEMORANDUM OF DECISION AND ORDER

DOMINIC J. SQUATRITO, District Judge.

The Plaintiffs, Bruce Crawford ("Crawford"), Mary Crawford ("Mary"), Adam Crawford ("Adam"), and Olivia Crawford ("Olivia") (collectively, "the Plaintiffs"), bring this action against the Defendants, Electric Boat Corp. ("Electric Boat") and the United States of America ("the United States") (collectively, "the Defendants"), pursuant to the Suits in Admiralty Act, 46 U.S.C. §§ 30901 *et seq.*, the Public Vessels Act, 46 U.S.C. §§ 31101 *et seq.*, the Jones Act, 46 U.S.C. § 30104, the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*, the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.*, and general maritime law. The Plaintiffs allege that Crawford sustained injuries aboard a vessel because of the Defendants' negligence and failure to make the vessel seaworthy, and that such injuries spread to Crawford's family. The United States has filed a motion to dismiss, arguing that the all of the Plaintiffs' claims brought pursuant to the Federal Tort Claims Act, and the warranty of seaworthiness claims, must be dismissed. (Dkt.# 31.) Electric Boat has filed a motion to dismiss the Plaintiffs' warranty of seaworthiness claims. (Dkt.# 40.) For the reasons set forth herein, the Defendants' motions to dismiss (**dkt. # s 31 & 40**) are **GRANTED.**

Matthew Shafner, O'Brien, Shafner, Stuart, Kelly & Morris, Groton, CT, for Plaintiffs.

## I. FACTS

The following facts are alleged in the Amended Complaint. At all relevant times, Crawford, who is an engineer, was employed by Electric Boat. Mary is Crawford's wife. Adam and Olivia are the minor children of Crawford and Mary. On November 21, 2004, Crawford was assigned to a vessel, the SSN–023 (otherwise known as the USS JIMMY CARTER),[1] which according the Amended Complaint, was then in the substantial possession and control of the United States. Crawford was aboard the SSN–023 for eleven days, during which time the SSN–023 was conducting its "Bravo" (or final) sea trial. The Plaintiffs allege that, during his time aboard the SSN–023, Crawford became ill and caught a serious infection (known as Methylin Resistant Staph Aureus) on account of the SSN023's unsanitary conditions. The Plaintiffs also allege that Crawford's infection spread to Mary, Adam, and Olivia. The Plaintiffs further maintain that: (1) as a result of this infection, they have suffered open sores with disfiguring wounds and scabs, recurring outbreaks of the infection, and physical pain and mental anguish; and (2) they have incurred the costs for continuing medical care and treatment, and for continuous disinfecting procedures of their bodies and possessions.

## II. DISCUSSION

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the Defendants seek dismissal of some of the Plaintiffs' claims. The United States argues that the Plaintiffs' claims brought pursuant to the Federal Tort Claims Act must be dismissed because the Suits in Admiralty Act, not the Federal Tort Claims Act, confers jurisdiction in this case.[2] The United States and Electric Boat both argue that the Plaintiffs' warranty of seaworthiness claims brought pursuant to general maritime law must be dismissed because, based upon the facts alleged in the Amended Complaint, no such duty existed at the time when Crawford was aboard the SSN–023. The United States further argues that, because no duty of seaworthiness was owed to Crawford, it had not waived its sovereign immunity.

### A. MOTION TO DISMISS STANDARD

A Rule 12(b)(1) motion seeks dismissal for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). "When considering a motion to dismiss for lack of subject matter jurisdiction ..., a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998). Nevertheless, "[t]he burden of proving jurisdiction is on the party asserting it." *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir.1996) (internal quotation marks omitted). That is, "when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is

---

1. Upon review of the Amended Complaint, it is unclear to the court when the vessel's appellation changed from "the SSN–023" to "the USS JIMMY CARTER." For the purposes of this decision, the court, without making any findings as to when the appellation changed or which Defendant owned the vessel during the relevant time period, shall refer to the vessel in question as "the SSN–023."

2. The United States, although denying in a footnote that the SSN–023 was a public vessel for the purpose of the Public Vessels Act during the relevant time period in this case, does not substantively addresses the Public Vessels Act.

not made by drawing from the pleadings inferences favorable to the party asserting it." *Drakos*, 140 F.3d at 131. A court may consider affidavits and other material beyond the pleadings to resolve jurisdictional questions under Rule 12(b)(1). *See Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 n. 6 (2d Cir.2001).

A Rule 12(b)(6) motion to dismiss seeks dismissal for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir.1998). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn. 1990) (citing *Scheuer*, 416 U.S. at 232, 94 S.Ct. 1683). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir.1993).

## B. ADMIRALTY LAW OR FEDERAL TORT CLAIMS ACT

### 1. Waiver of Sovereign Immunity

 "It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). "A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *Id.* (quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)). There is no dispute that both the Federal Tort Claims Act and the Suits in Admiralty Act provide waivers of the United States' sovereign immunity. *See* 28 U.S.C. § 2674 (Federal Tort Claims Act); 46 U.S.C.A. § 30903 (Suits in Admiralty Act).

As the Second Circuit has held (and as the United States points out), the Suits in Admiralty Act "simply withdraw[s] sovereign immunity; [it] do[es] not create anything." *Blanco v. United States*, 775 F.2d 53, 63 n. 8 (2d Cir.1985). Additionally,

> [t]he Tort Claims Act was designed to eliminate the government's sovereign immunity from suits in tort and, with certain exceptions, to render it liable as a private individual would be under like circumstances.... The Act is not the creation of new causes of action but acceptance of liability under circumstances that would bring private liability into existence.

*United States v. Gov't Employees Ins. Co., Inc.*, 612 F.2d 705, 706–07 (2d Cir.1980) (internal quotation marks and citations omitted). That is to say, these statutes simply allow the Plaintiffs to bring causes of action that they otherwise would not have been able to bring on account of the United States' sovereign immunity. Thus, the Plaintiffs' cannot, and do not, have a Suits in Admiralty Act (or a Federal Tort

Claims Act) "cause of action" against the United States. Rather, as seen in their Amended Complaint, the Plaintiffs' causes of action against the United States are negligence and "unseaworthiness."

2. Application of the Admiralty Statutes

The United States argues that any of the Plaintiffs' claims brought pursuant to the Federal Tort Claims Act claims should be dismissed because the Suits in Admiralty Act, not the Federal Tort Claims Act, confers jurisdiction in this case. The Federal Tort Claims Act provides that it is inapplicable to "[a]ny claim for which a remedy is provided by chapter 309 [the Suits in Admiralty Act] or 311 [the Public Vessels Act] of title 46 relating to claims or suits in admiralty against the United States." 28 U.S.C. § 2680(d). The Plaintiffs concede that Federal Tort Claims Act and the Suits in Admiralty Act are mutually exclusive. (*See* dkt. # 41 p. 4.) The Plaintiffs argue, however, that their claims should be regarded as pled in the alternative, thus precluding dismissal of their claims brought pursuant to the Federal Tort Claims Act.

■ The court disagrees with the Plaintiffs. If the Plaintiffs' suit is one in admiralty, it must be brought under an admiralty statute.[3] *See* 28 U.S.C. § 2680(d). The court notes that, in their Amended Complaint, the Plaintiffs expressly state that "[t]his is a case of admiralty maritime federal jurisdiction . . . ." (Dkt. # 36 ¶ 4.) Nevertheless, this statement, by itself, does not confer admiralty jurisdiction. "Admiralty jurisdiction in tort exists when the wrong (1) took place on navigable waters ("situs") and (2) bear[s] a significant relationship to traditional maritime activity" ("status")." *Keene Corp. v. United States*, 700 F.2d 836, 843 (1983) (internal quotation marks omitted); *see Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995) ("[A] party seeking to invoke federal admiralty jurisdiction . . . over a tort claim must satisfy conditions both of location and of connection with maritime activity."); *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir.1999).

■ With regard to the "situs" test, the court "must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Jerome B. Grubart, Inc.*, 513 U.S. at 534, 115 S.Ct. 1043. When considering the question of "navigable waters" for admiralty jurisdiction purposes, courts have applied the definition of navigable waters first articulated in *The Daniel Ball*, 77 U.S. (10 Wall.) 557, 19 L.Ed. 999 (1870):

> Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary con-

---

**3.** Again, the United States' motion concerns the Suits in Admiralty Act, not the Public Vessels Act, pursuant to which the Plaintiffs have also brought their claims. The court notes that with regard to its analysis of the interplay between the Federal Tort Claims Act and admiralty law, there is no substantive difference between the Suits in Admiralty Act and the Public Vessels Act. Both the Suits in Admiralty Act and the Public Vessels Act waive the United States' sovereign immunity, 46 U.S.C. § 30903; 46 U.S.C. § 31102, and both are mutually exclusive of the Federal Tort Claims Act, 28 U.S.C. § 2680(d). *See Cranford v. United States*, 466 F.3d 955, 958 (11th Cir.2006) ("The Suits in Admiralty Act . . . provides a waiver of sovereign immunity and the sole jurisdictional basis for admiralty claims against the United States . . . that do not involve public vessels. . . . The Public Vessels Act . . . provides a waiver of sovereign immunity for admiralty claims involving public vessels. Both waivers are subject to the discretionary function exception of the Federal Tort Claims Act . . . .") (internal quotation marks and citations omitted).

dition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water.

*Id.* at 563, 10 Wall. 557; *see LeBlanc,* 198 F.3d at 356–57. "Navigability requires that the body of water be capable of supporting commercial maritime activity." *LeBlanc,* 198 F.3d at 360. "A waterway is navigable provided that it is used or susceptible of being used as an artery of commerce. Neither non-commercial fishing nor pleasure boating ... constitutes commerce. Commerce for the purpose of admiralty jurisdiction means activities related to shipping." *Id.* (internal quotation marks omitted).

■ With regard to the status test, there are two issues. First, a court "must assess the general features of the type of incident involved[ ] ... to determine whether the incident has a potentially disruptive impact on maritime commerce.... Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Jerome B. Grubart, Inc.,* 513 U.S. at 534, 115 S.Ct. 1043.

■ Based upon the facts set forth in the Plaintiffs' Amended Complaint, the

court finds that this is an admiralty case. The "situs" test is easily met here. In the Amended Complaint, the Plaintiffs allege that Crawford sustained his injuries while aboard the SSN–023, which at the time was conducting "sea trials." "Sea trials" presumes that the SSN–023 was at sea, which is not the navigable waters of one particular State, but a continued highway over which commerce is or may be carried on with other States or foreign countries.[4]

The court also believes that the "status" test is met here. First, the court must decide if the incident at issue involved a "potentially disruptive impact on maritime commerce." Crawford alleges that, while he was performing his (presumably engineering) job duties during the SSN–023's sea trials, he sustained his injuries because of the SSN–023's unsanitary conditions. As the Eleventh Circuit has expressly held, "[u]nsafe working conditions aboard a vessel under repairs, maintenance, or conversion, ... pose a potentially disruptive impact upon maritime commerce." *Alderman v. Pac. N. Victor, Inc.,* 95 F.3d 1061, 1064 (11th Cir.1996); *see Lambert v. Babcock & Wilcox, Co.,* 70 F.Supp.2d 877, 884 (S.D.Ind.1999) ("Unsafe working conditions aboard a vessel have consistently been held to pose a potentially disruptive impact upon maritime commerce....") Such unsafe conditions "[n]ot only could ... inhibit the maritime commerce of the vessel ..., but ... could easily disrupt other vessels." *Alderman,* 95 F.3d at 1064.

Second, the court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional mari-

---

**4.** Given the background of this case, one can infer that the sea here is the Atlantic Ocean, which, according the case law, undoubtedly qualifies as "navigable water." Or, the SSN–

023 was conducting its trials in Long Island Sound, which also undoubtedly qualifies as "navigable water."

time activity. There is no question that naval sea operations is a "traditional maritime activity." In the court's view, the maintenance and preparation of a naval vessel, which is what Crawford was doing, has a substantial relationship to this maritime activity. Consequently, the "status" test is met here.

Additionally, as the United States points out, admiralty law applies not only to Crawford, but also to Mary, Adam, and Olivia. Under the Extension of Admiralty Jurisdiction Act, "[t]he admiralty and maritime jurisdiction of the United States extends to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land." 46 U.S.C. § 30101(a). The Extension of Admiralty Act reiterates that "[i]n a civil action against the United States for injury or damage done or consummated on land by a vessel on navigable waters, chapter 309 [the Suits in Admiralty Act] or 311 [the Public Vessels Act] of this title, as appropriate, provides the exclusive remedy." *Id.* § 30101(c)(1). Thus, although Mary's, Adam's, and Olivia's alleged injuries occurred on land, admiralty law extends to them because it was caused by the SSN–023, which was on navigable waters when Crawford experienced the SSN–023's alleged unsanitary conditions.

### 3. "Vessel in Navigation"

With regard to the jurisdictional arguments in this case, the Plaintiffs make the final argument that there is a question as to whether the SSN–023, as a vessel undergoing sea trials, is a "vessel in navigation" for the purposes of admiralty jurisdiction. Clearly, the invocation of the Suits in Admiralty Act (and the Public Vessels Act) requires the involvement of a vessel. *See* 46 U.S.C. § 30903; 46 U.S.C. § 31102. The Plaintiffs argue that it is unclear whether a vessel undergoing sea trials qualifies as a "vessel in navigation" under the Suits in Admiralty Act.

Based upon the Amended Complaint, the court is certain that the SSN–023 qualifies as a "vessel in navigation" for admiralty jurisdiction purposes. For all sections of Title 46 of the U.S.Code, under which both the Suits in Admiralty Act and Public Vessels Act fall, the term "vessel" has the same meaning given that term in Section 3 of Title 1. *See* 46 U.S.C. § 115. Section 3 of Title 1 of the U.S.Code reads as follows: "The word 'vessel' includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C. § 3.

"Section 3 requires only that a watercraft be used, or capable of being used, as a means of transportation on water to qualify as a vessel. It does not require that a watercraft be used primarily for that purpose." *Stewart v. Dutra Const. Co.,* 543 U.S. 481, 495, 125 S.Ct. 1118, 160 L.Ed.2d 932 (2005) (internal quotation marks omitted). "[A] watercraft need not be in motion to qualify as a vessel under § 3." *Id.* Furthermore, although the Supreme Court has used the phrase "vessel in navigation," it "did not mean that the 'in navigation' requirement stood apart from § 3, such that a 'vessel' for purposes of § 3 might nevertheless not be a 'vessel in navigation'...." *Id.* at 496, 125 S.Ct. 1118. "Instead, the 'in navigation' requirement is an element of the vessel status of a watercraft. It is relevant to whether the craft is 'used, or capable of being used' for maritime transportation." *Id.* Thus, there is no separate "in navigation" requirement for a "vessel" under either the Suits in Admiralty Act or the Public Vessels Act.

The Plaintiffs cite to a decision of the Honorable Jay C. Zainey from the Eastern District of Louisiana, *Macklin–Ducre ex rel. Macklin v. Rental Serv. Corp.,* No.

Civ.A. 03–3559, 2004 WL 1243683 (E.D.La. June 4, 2004), to support their proposition that, because the SSN–023 was conducting sea trials, it was not a "vessel in navigation" for the purposes of admiralty jurisdiction. In *Macklin–Ducre,* the plaintiff's decedent, a "rigger" aboard a vessel being built for the United States Navy, was fatally injured while operating a forklift. *Id.* at *1. Judge Zainey found that the vessel in question was not a "vessel in navigation" for admiralty jurisdiction purposes because the vessel was under construction at the time the accident, had not been turned over to the United States Navy, and was still undergoing repairs and sea trials. *Id.* at *1–2.

First, the court notes that *Macklin–Ducre* was decided before the Supreme Court's decision in *Stewart,* and thus Judge Zainey did not have the benefit of *Stewart's* guidance. It appears that the *Macklin–Ducre* decision, and certain cases cited to therein (i.e., *Reynolds v. Ingalls Shipbuilding Div., Litton Sys., Inc.,* 788 F.2d 264, 267 (5th Cir.1986); *Williams v. Avondale Shipyards, Inc.,* 452 F.2d 955, 958 (5th Cir.1971)), when discussing a "vessel in navigation," considered the phrase "in navigation" to be a requirement separate from the term "vessel." At the time *Macklin–Ducre* was decided, it was perfectly appropriate (indeed, it was required) for Jude Zainey, in analyzing the phrase "vessel in navigation," to consider "in navigation" to be a separate require-

ment from "vessel," given the controlling precedent at the time. *See Reynolds,* 788 F.2d. at 267; *Williams,* 452 F.2d at 958. The Supreme Court, however, has expressly rejected this understanding of the phrase "vessel in navigation." *See Stewart,* 543 U.S. at 496, 125 S.Ct. 1118. There is no such separate "in navigation" requirement. "In navigation" is simply an element of a vessel's status as a watercraft, and is relevant as to whether the craft is used, or capable of being used, for maritime transportation. *See id.* It is possible, then, that, in light of *Stewart, Macklin–Ducre* might have had a different outcome.[5]

Second, the facts of *Macklin–Ducre* appear to be distinguishable from the facts alleged in the Plaintiffs' Amended Complaint. In *Macklin–Ducre,* the plaintiff's decedent was killed while the vessel in question was undergoing construction, i.e., the vessel was apparently still being built. In this case, Crawford sustained his alleged injuries while the SSN–023 was undergoing its final sea trials, i.e., was already underway at sea. There is no indication that the SSN–023 was still being built during its final sea trials. Although *Macklin–Ducre* (and the above-mentioned cases cited to therein) indicated that a vessel undergoing sea trials was not a "vessel in navigation," the court believes that, in light of *Stewart,* this is not necessarily so because a vessel at sea performing final sea trials is not

---

5. The court finds it odd that the Plaintiffs rely on *Macklin–Ducre* here. The Plaintiffs themselves cite to a decision of the Honorable Robert G. James from the Western District of Louisiana, who found the Fifth Circuit's analysis of the phrase "vessel in navigation" (e.g., the "vessel in navigation" analysis as seen in *Williams,* which was cited to in *Macklin–Ducre*), to be in conflict with the Supreme Court's analysis in *Stewart. See Cain v. Transocean Offshore Deep Water Drilling, Inc.,* No. Civ.A. 03–1372, 2005 WL 1959147, at *7–

8 (W.D.La. Aug. 12, 2005). Judge James found the Fifth Circuit's "vessel in navigation" test to be inconsistent with the *Stewart* decision. *See id.* Thus, insofar as it uses the Fifth Circuit's "vessel in navigation" test, *Macklin–Ducre* is also inconsistent with the *Stewart* decision. Furthermore, the Plaintiffs themselves assert that *Williams* and *Reynolds,* upon which *Macklin–Ducre's* "vessel in navigation" analysis rested, now "are of little precedential value" because of *Stewart.* (*See* dkt. # 41 p. 11.)

only capable of, but is actually being used for, maritime transportation.[6]

Based upon the foregoing, the court concludes that the admiralty statutes referenced in the Plaintiffs' Amended Complaint provide the court with jurisdiction in this case. Both the Suits in Admiralty Act and the Public Vessels Act are mutually exclusive of the Federal Tort Claims Act. Consequently, insofar as it asks the court to dismiss the Plaintiffs' claims brought pursuant to the Federal Tort Claims Act, the United States' motion to dismiss (dkt.# 31) is **GRANTED.**

## C. WARRANTY OF SEAWORTHINESS

▅▅▅▅ The Defendants argue that the facts alleged in the Amended Complaint fail to state a claim for a breach of the maritime law warranty of seaworthiness. As the Supreme Court stated over a century and a half ago, "[i]t is, no doubt, the general rule, that the owner warrants his ship to be seaworthy for the voyage with the cargo contracted for." *Lawrence v. Minturn*, 58 U.S. 100, 110, 17 How. 100, 15 L.Ed. 58 (1854). "Seaworthiness is to be tested by ability to perform the service undertaken." *Petition of Reliance Marine Transp. & Const. Corp.*, 206 F.2d 240, 243 (2d Cir.1953). "[S]eaworthiness[ ] . . . means not only the reasonable ability of a ship to meet the anticipated conditions of the sea but its ability to carry safely the cargo which it has accepted for shipment." *R.T. Jones Lumber Co. v. Roen Steamship Co.*, 270 F.2d 456, 458 (2d Cir.1959) (citing

*Martin v. Southwark*, 191 U.S. 1, 24 S.Ct. 1, 48 L.Ed. 65 (1903); *The Silvia*, 171 U.S. 462, 19 S.Ct. 7, 43 L.Ed. 241 (1898)); *see Reliance Marine*, 206 F.2d at 243 ("A vessel is unseaworthy unless she is reasonably fit to carry her cargo safely despite the perils to be anticipated on the voyage.").

The Defendants maintain that no warranty of seaworthiness was made to Crawford[7] because, at the time when he was aboard the SSN–023, the vessel was in its final sea trial. To support this contention, the Defendants cite to both *Williams* and *Reynolds*, the two Fifth Circuit decisions whose "vessel in navigation" test the court called into question because of the Supreme Court's later decision in *Stewart*. According to the Plaintiffs, the Defendants reliance upon *Williams* and *Reynolds* is misguided because *Williams* and *Reynolds* "are of little precedential value" in light of the Supreme Court's decision in *Stewart*. The Defendants counter that *Stewart* only overruled the Fifth Circuit's "vessel in navigation" test, which is separate from the seaworthiness analysis.

The court agrees with the Defendants on this point. *Stewart* did not address any arguments relating to "seaworthiness." Rather, it settled the dispute over the meaning of "vessel in navigation." Thus, insofar as *Williams* and *Reynolds* conflicted with the "vessel in navigation" holdings in *Stewart*, they were overruled.

Nevertheless, in the court's view, the "seaworthiness" analyses in *Williams* and *Reynolds* remain untouched. In *Williams*, the Fifth Circuit held that "[t]he whole purpose of [a] sea trial [is] to ascertain

---

6. The "sea trials" language in *Macklin–Ducre* might not necessarily have been central to that decision. Because the vessel in *Macklin–Ducre* appears to have been being built at the time of the accident, it is possible that the vessel was not capable of being used for maritime transportation. Thus, Judge Zainey's decision in *Macklin–Ducre* would remain unaltered, despite the *Stewart* decision.

7. It stands to reason that only Crawford could assert a breach of the warranty of seaworthiness. In the Amended Complaint, none of the other Plaintiffs are alleged to have gone aboard the SSN–023; ergo, the warranty of seaworthiness would not extend to them.

what additional work would be required to make [a vessel] fully fit. [A][s]hipbuilder could, of course, be held to due care to those properly aboard, but that is a far cry from the awesome obligations of seaworthiness.... That was precisely what the trial run was intended to determine." *Williams*, 452 F.2d at 957. In *Reynolds*, the Fifth Circuit restated this point, noting that "a ship engaged in sea trials makes no warranty of seaworthiness; the ship is undergoing trials precisely to determine what, if any, additional work needs to be done." *Reynolds*, 788 F.2d at 267.

The court finds the reasoning in *Williams* and *Reynolds* to be persuasive here. In the Amended Complaint, the Plaintiffs allege that Crawford was aboard the SSN–023 during its final sea trial. The court fails to see how a warranty of seaworthiness could exist before the vessel had completed the test establishing its seaworthiness, and it stands to reason that whichever Defendant was responsible for the SSN–023 at the time would not warrant the vessel's seaworthiness before the conclusion of that final sea trial. Thus, the court concludes that the Plaintiffs have failed to allege fact sufficient to support a warranty of seaworthiness claim. Consequently, insofar as they ask the court to dismiss the Plaintiffs' warranty of seaworthiness claims, the Defendants' motions to dismiss (**dkt. # s 31 & 40**) are **GRANTED.**[8]

### III. CONCLUSION

For foregoing reasons, the Defendants' motions to dismiss (**dkt. # s 31 & 40**) are **GRANTED.**

---

8. Because the court has found that the Plaintiffs have failed to state a claim upon relief can be granted with regard to their warranty of seaworthiness claims, it shall not discuss the United States' sovereign immunity argument.